# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 1:19-cv-01867-LAK, 1:19-cv-01868-LAK, 1:19-cv-01869-LAK, 1:19-cv-01895-LAK, 1:19-cv-01896-LAK, 1:19-cv-01898-LAK, 1:19-cv-01904-LAK, 1:19-cv-01906-LAK, 1:19-cv-01911-LAK, 1:19-cv-01924-LAK | Master Docket 18-md-02865 (LAK)<br><br>ECF Case |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINTS PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(1)**

WILMER CUTLER PICKERING
  HALE AND DORR LLP

MICHAEL G. BONGIORNO
ALAN E. SCHOENFELD
ALLISON STODDART
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

MICHAEL POSADA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

June 12, 2019

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

    A.    SKAT's Role In Assessing And Collecting Danish Taxes......................................2

    B.    This Litigation.........................................................................................................4

ARGUMENT ..................................................................................................................................4

    A.    The Court Lacks Subject Matter Jurisdiction Because SKAT Lacks Standing ..................................................................................................................5

    B.    SKAT, Not The Kingdom Of Denmark, Brought This Action, and SKAT Has Not Suffered an Injury ......................................................................................6

    C.    SKAT Does Not Have Article III Standing To Act On Any Other Party's Behalf....................................................................................................................10

    D.    Because SKAT Lacks Standing To Sue, The Cases Should Be Dismissed...........12

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
 671 F.3d 140 (2d Cir. 2011) ............................................................................................4

*Artists Rights Enforcement Corp. v. Estate of Robinson*,
 2017 WL 933106 (S.D.N.Y. Mar. 8, 2017) ...............................................................10, 11

*Bigio v. Coca-Cola Co.*,
 2010 WL 3377503 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012) ................5

*Chau v. SEC*,
 72 F. Supp. 3d 417 (S.D.N.Y. 2014), *aff'd*, 665 F. App'x 67 (2d Cir. 2016) .........................4

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398, 133 S. Ct. 1138 (2013) ................................................................................5

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*,
 790 F.3d 411 (2d Cir. 2015) ............................................................................... 6, 11, 12

*Director, Office of Workers' Comp. Programs v. Newport News Shipbldg. & Dry Dock Co.*,
 514 U.S. 122, 115 S. Ct. 1278 (1995) ...............................................................................11

*Estados Unidos Mexicanos v. DeCoster*,
 229 F.3d 332 (1st Cir. 2000) .............................................................................................6

*Faggionato v. Lerner*,
 500 F. Supp. 2d 237 (S.D.N.Y. 2007) ...............................................................................5

*Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.*,
 726 F.3d 62 (2d Cir. 2013) ..............................................................................................11

*In re Skat Tax Refund Scheme Litigation*,
 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ............................................................................1, 4

*Keepers, Inc. v. Milford*,
 807 F.3d 24 (2d Cir. 2015) ................................................................................................7

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000) ..........................................................................................5, 7

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
 418 F.3d 168 (2d Cir. 2005) ............................................................................................11

*Pfizer, Inc. v. Government of India*,
    434 U.S. 308, 98 S. Ct. 584 (1978)..........................................................................................6

*United States v. Cambio Exacto, S.A.*,
    166 F.3d 522 (2d Cir. 1999)......................................................................................................9

*Utilisave, LLC v. Spark Energy, L.P.*,
    2011 WL 2174855 (E.D.N.Y. May 31, 2011) .......................................................................10

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464, 102 S. Ct. 752 (1982).........................................................................................5

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)............................................................................................ *passim*

*Warth v. Seldin*,
    422 U.S. 490, 95 S. Ct. 2197 (1975).....................................................................................5, 8

**Docketed Cases**

*Skatteforvaltningen v. RJM Capital Pension Plan*,
    No. 19-cv-01898 (S.D.N.Y.).....................................................................................................2

**PRELIMINARY STATEMENT**

The Complaints[1] in these cases allege that Defendants engaged in a scheme to obtain tax refunds for withheld dividend taxes paid by Danish companies. As this Court observed in its revenue-rule decision, Defendants are alleged to have received "many millions of dollars in tax refunds from the Danish treasury under false and fraudulent pretenses." *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308 (S.D.N.Y. 2019). Because the allegations are based on a claim that money was wrongfully taken from the Danish treasury, any injury from Defendants' alleged fraud belongs to the Danish treasury.

But neither the Danish treasury nor even the Danish ministry responsible for administering its funds brought this case. Rather, the plaintiff is Skatteforvaltningen (SKAT), the Danish agency responsible for the assessment and collection of taxes in Denmark. SKAT is not part of the Danish treasury and does not own or have legal title to the tax revenues that it claims were paid out as a result of Defendants' alleged fraud. As a result, SKAT lacks standing to sue. The tax revenues belonged at all times to the Kingdom of Denmark itself—not SKAT— and so SKAT suffered no constitutionally cognizable injury when the allegedly wrongful reclaims were paid using Denmark's treasury funds.

U.S. law is clear that the party invoking federal court jurisdiction must have a concrete and personal injury, and may not—except under circumstances not present here—assert the rights of a third party or a principal. That rule applies equally to foreign governments and their

---

[1] Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM Capital Pension Plan, and Routt Capital Pension Plan (collectively, Defendants) named in the complaints (Complaints) that SKAT filed in the cases enumerated in the above caption bring this motion.

agencies. A foreign governmental agency cannot bring suit to vindicate claims that belong to the sovereign itself. Therefore, the agency lacks standing to sue, and the cases must be dismissed.

## BACKGROUND

### A. SKAT's Role In Assessing And Collecting Danish Taxes

SKAT is "the agency of the government of Denmark charged with the assessment and collection of Danish taxes." Compl. ¶ 16, *Skatteforvaltningen v. RJM Capital Pension Plan*, No. 19-cv-01898 (S.D.N.Y. Feb. 28, 2019). This "charge[]" results from several carefully defined statutory authorities and responsibilities related to taxation, including the State Tax Act, the Danish Tax Assessment Act, the Danish Tax Control Act, and the Collection of Debt Act. *See* Declaration of Kasper Bech Pilgaard ("Pilgaard Decl.") ¶¶ 35, 43-46. While the tools available in Denmark for SKAT to fulfill these responsibilities are broad—such as the authority to impose a lien, to attach a taxpayer's income or salary, and to set-off a taxpayer's debt against an amount owed to the public—in all instances, they directly relate to or involve the assessment of an identified tax. Pilgaard Decl. ¶ 47.

SKAT's involvement with Danish tax revenues ceases after the assessment of taxes is complete. Danish law provides that a separate ministry, the Ministry of Finance, has control and responsibility for the funds collected. Pilgaard Decl. ¶¶ 21-27. In accordance with the Constitution of Denmark and other statutes, these funds are paid to what are referred to as the "Public Accounts." Pilgaard Decl. ¶¶ 9-10. SKAT does not manage the Public Accounts. That responsibility, which originates with the Ministry of Finance, is delegated by the Ministry of Finance to the Agency for Modernisation. Pilgaard Decl. ¶ 11.

SKAT does not enjoy the benefits, nor bear the burdens, if it collects more or less tax revenue than the Danish government anticipated. SKAT cannot keep any surpluses in taxes collected, nor must it reimburse the Danish treasury or the Ministry of Finance for any deficits.

Pilgaard Decl. ¶¶ 37, 42. While SKAT may have the capacity to pursue claims owed in the event of an unretrieved tax owed to Denmark, this is not a liability for which SKAT must compensate the Danish treasury if it is unsuccessful (nor, for that matter, is that the kind of claim raised here). At bottom, SKAT suffers no loss, and in turn no injury, if it is wholly or partially unsuccessful in its tax collection efforts.

The Constitution of Denmark and enacting statutes passed by the Danish Parliament enshrine the clear division between the assessment of funds owed and the administration of funds collected. Pursuant to Section 46(2) of the Constitution of Denmark, state funds can only be spent if authorized by the Finance Act, which is passed by the Danish Parliament. Pilgaard Decl. ¶ 8. Various Danish laws then govern the process by which the Ministry of Finance maintains and distributes tax revenues, Pilgaard Decl. ¶ 23 (citing Provision 2(2) and 3 in the State Account's Act), but none mentions or contemplates a role for SKAT. Not only does SKAT have no authority to decide how the tax revenues it collects are apportioned, but it also must lobby the Danish Parliament for funding for its operations like every other ministry. Pilgaard Decl. ¶ 16.

By the same token, if a ministry or agency spends more than it is allotted in the budget, then the Ministry of Finance, not SKAT, must request additional funding from the Danish Parliament, which can authorize funding through a supplementary permit. Pilgaard Decl. ¶¶ 19-20. And the Ministry of Finance, not SKAT, is responsible for the payment of Denmark's debts. Pilgaard Decl. ¶ 27. To the extent that tax revenues fall short, the Danish Parliament and the Ministry of Finance have the responsibility to fill the gap through additional borrowing, reductions in spending, or by authorizing additional taxation. Pilgaard Decl. ¶ 20. SKAT is not responsible for collecting more funds or disbursing money from its own budget in the event of a budget or collection deficit.

3

B.     **This Litigation**

As this Court has explained, this constellation of cases centers on SKAT's claim that "defendants defrauded it of millions of dollars by submitting tax refund claims in which they falsely claimed to own stocks in Danish companies that had paid dividends net of withholding tax." 356 F. Supp. 3d at 307. The Complaints are sparse with respect to SKAT's supposed standing. SKAT identifies itself as "the agency of the government of Denmark charged with the assessment and collection of Danish taxes," Compl. ¶ 16, and it alleges that it was defrauded into making payments to Defendants on specified dates. The Complaints do not allege, however, that SKAT had any ownership interest in or title to the tax revenues it paid on behalf of the Kingdom of Denmark, nor do they allege that SKAT sues here on behalf of the Kingdom or the Danish treasury. The Court has not yet addressed SKAT's standing; rather, it has only denied certain defendants' motions to dismiss similar complaints based on the revenue rule, concluding that nothing in those complaints required direct enforcement of Danish tax law because SKAT "has not alleged a single instance of tax evasion—it alleges fraud, pure and simple." 356 F. Supp. 3d at 311.

## ARGUMENT

The plaintiff bears the burden of establishing subject-matter jurisdiction, and so it "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). A court must address a challenge to the plaintiff's standing and satisfy itself that the court has jurisdiction in order to proceed with the case. *See Chau v. SEC*, 72 F. Supp. 3d 417, 421 (S.D.N.Y. 2014) (Kaplan, J.) ("The Court must address the threshold question of whether it has subject matter jurisdiction before considering the merits."), *aff'd*, 665 F. App'x 67 (2d Cir. 2016).

Where the defendant challenges the court's subject-matter jurisdiction—including the plaintiff's standing—the court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits and exhibits. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). That includes assertions of foreign law, which under Federal Rule of Civil Procedure 44.1 must be presented to the court on "notice by a pleading or other writing." *See Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244 (S.D.N.Y. 2007). The party raising an issue of foreign law at the motion to dismiss stage bears the burden of proving the foreign law such that the district court can apply it. *See Bigio v. Coca-Cola Co.*, 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010), *aff'd*, 675 F.3d 163 (2d Cir. 2012). Pursuant to Rule 44.1, Defendants submit the declaration of Kasper Bech Pilgaard, a Danish lawyer, to support their contentions regarding Danish law.

### A. The Court Lacks Subject Matter Jurisdiction Because SKAT Lacks Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" and "'[o]ne element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 1146 (2013) (citations omitted). This dispute turns on the "injury" prong. "Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) (internal quotation marks omitted). Standing also requires that a party assert its own injury, not the injury of third parties, unless there is a clear assignment or some other interest. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own

5

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 420 (2d Cir. 2015) ("Our caselaw confirms that a purported assignee of a claim must plead a proprietary interest in that claim, and not simply the ability to pursue the claim on behalf of another, to bring the claim in his or her own name and satisfy the requirements of constitutional standing."); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (holding that plaintiff's "status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its clients' investment decisions does not confer on [the plaintiff] Article III standing to sue in a representative capacity on its clients' behalf").

A foreign government, like a domestic individual or corporation, is required to meet the requirements of Article III standing to bring suit. *See Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 336 (1st Cir. 2000) ("The Supreme Court 'has long recognized the rule that a foreign nation is generally entitled to prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do.'") (citing *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 318-19, 98 S. Ct. 584, 591 (1978)).

### B. SKAT, Not The Kingdom Of Denmark, Brought This Action, and SKAT Has Not Suffered an Injury

SKAT filed suit on its own behalf to recover revenues that it claims it was defrauded into paying. The threshold problem with that submission, however, is that SKAT had no claim or title to, nor interest in, those revenues. They belong to the Kingdom of Denmark, not SKAT, and the Kingdom of Denmark is not before the Court. SKAT has not suffered any loss by virtue of having paid dividend reclaims, and it is not responsible for recovering any purported deficit. SKAT, the sole plaintiff here, must demonstrate that *it* meets the causation, injury, and

6

redressability requirements of standing to maintain its claims in federal court. But it is merely an agency of the Danish government, with highly circumscribed authorities and no ownership over the funds that it collects from tax assessments. It accordingly lacks standing to sue, and the Complaints should be dismissed.

To start, the allegations in the Complaints do not state a particularized and concrete harm to SKAT; they merely allege that SKAT is "the agency of the government of Denmark charged with the assessment and collection of Danish taxes," Compl. ¶ 1, and appear to assume the rest of the analysis. But this is not sufficient to show that SKAT has an independent basis for establishing injury separate from the Kingdom of Denmark. At no point do the Complaints allege that SKAT owns or is otherwise entitled to the money it collects. *See, e.g.*, *Keepers, Inc. v. Milford*, 807 F.3d 24, 40 (2d Cir. 2015) ("[C]ourts are not permitted to simply assume [plaintiff's] standing to assert the rights of … third parties").

SKAT will no doubt insist that because it received the purportedly false reclaims and alleges that tax revenue was taken "from SKAT," it must have suffered the requisite injury. But on a Rule 12(b)(1) motion, this Court is permitted to look beyond the complaint to determine the true nature of the injury. *See Makarova*, 201 F.3d at 113. In this case, no money could have been taken "from SKAT" because any money that SKAT paid out as part of a dividend reclaim belonged to the Kingdom of Denmark. As explained in the accompanying declaration and above (*see supra* pp. 2-4), the administrative structure of the Danish government confirms this. SKAT acts pursuant to its statutory authority to assess and collect taxes; it has a nondiscretionary duty to remit what it collects to the Public Accounts. It does not decide how the tax revenues are allocated among government agencies, does not distribute the revenues it collects, and, most importantly, is not responsible for the consequences of a deficit in revenue collection.

7

Pilgaard Decl. ¶¶ 26, 38, 41. That authority and responsibility rest with the Kingdom of Denmark, not SKAT; the Kingdom of Denmark, through the Parliament and the Ministry of Finance, controls the funds, their maintenance, and their expenditure. Pilgaard Decl. ¶¶ 8-10. In short, SKAT has no skin in this game because it does not suffer a direct injury itself, and without that injury, it does not have standing. *Warth*, 422 U.S. at 498-99, 95 S. Ct. at 2205 ("[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally."). SKAT is, at best, an agent for other arms of the Kingdom of Denmark, and an agent has no standing to sue on its own. *See infra* pp. 10-12 .

That SKAT accepted supposedly fraudulent dividend reclaim submissions from Defendants and had the ability to draw on funds owned by the Kingdom of Denmark to pay them does not establish an injury sufficient to establish standing, as Second Circuit precedent makes clear. In *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, the plaintiff investment advisor alleged that the defendants had prepared or facilitated misleading disclosures in a publicly traded company's financial statements and that the plaintiff investment advisor had purchased the company's securities on its clients' behalf as a result. 549 F.3d 100, 104 (2d Cir. 2008). The Second Circuit held that the investment advisor lacked standing because it was the advisor's clients, not the advisor itself, who suffered the financial loss when the public company filed for bankruptcy. Therefore, the clients, and not the advisor, suffered the injury for Article III purposes. *Id.* Here, as in *W.R. Huff*, mere allegations of relying on misrepresentations and an associated loss—without more—do not establish injury.

8

Similarly, that SKAT has the authority to pay refunds or make other payments using Danish treasury funds does not mean that SKAT suffers a constitutionally cognizable injury. Again, in *W.R. Huff*, the investment advisor had the authority to make purchases on its clients' behalf. 549 F.3d at 103-07. The district court incorrectly held that "unfettered discretion to make investment decisions" was sufficient to confer standing, and the Second Circuit reversed, noting that only the investment advisor's *clients* had suffered an injury. Because the investment advisor could not establish its own basis for injury through an assignment or other means, its claims failed for lack of standing. *Id.* at 107-11.

This principle—that possession or discretion does not suffice to establish standing, and a party only has standing to sue if it owns the funds and suffers a direct economic impact of any loss—applies across myriad areas of law. For example, in the civil forfeiture context, the Second Circuit has explained that the mere possession of funds does not confer standing when those funds are seized, as an actual injury must still be proven:

> [W]hile ownership and possession generally may provide evidence of standing, it is the injury to the party seeking standing that remains the ultimate focus. It is because of the lack of proven injury that we have, for example, denied standing to "straw" owners who do indeed "own" the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken. Acknowledging that "[t]he word 'possession' drips with ambiguity," we have similarly held that where a mere custodian has possession, it is only a "naked claim of possession" and does not thereby impart Article III standing.

*United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) (citations omitted). In applying this principle in *Cambio Exacto*, the Second Circuit held that while certain transmitters of funds had suffered an injury sufficient to confer standing because they were ultimately liable to their customers for the funds seized, the correspondent that merely remitted funds on behalf of the transmitters had no liability and in turn, no injury from the seizure. *Id.* at 528-29. Here, SKAT is not differently situated than the investment advisor in *W.R. Huff* or the correspondent in

9

*Cambio Exacto*; it is merely an entity with authority to remit the funds at issue, but has no real title or ownership in the funds it holds or transfers. In short, SKAT has no standing to sue under Article III.

## C. SKAT Does Not Have Article III Standing To Act On Any Other Party's Behalf

SKAT sues here in its own right, not on behalf of any other party. *See* Compl. ¶ 16 (identifying SKAT as the plaintiff based on the allegation that it "is the agency of the government of Denmark charged with the assessment and collection of Danish taxes"). Upon this challenge to its standing to sue on its own behalf, SKAT may purport in this matter to be acting on behalf of of the Kingdom of Denmark to recover the amounts paid from the Danish treasury for the reclaims, but there is no legal authority that provides SKAT with standing here. SKAT appears to assume, by virtue of this litigation, that it can act with the same legal authority and standing as the Kingdom of Denmark. But SKAT and the Kingdom of Denmark are distinct entities, and an instrumentality of a foreign government does not automatically possess all of the same legal benefits or burdens as the foreign government itself.

*First*, even if SKAT purports to act as an agent of the Danish government, an agent is not imbued with standing simply by virtue of its agency relationship with a principal that does have standing. *See Artists Rights Enf't Corp. v. Estate of Robinson*, 2017 WL 933106, at *5 (S.D.N.Y. Mar. 8, 2017) ("Defendants are correct that a mere agent of a principal does not have standing."); *Utilisave, LLC v. Spark Energy, L.P.*, 2011 WL 2174855, at *1 (E.D.N.Y. May 31, 2011) ("The Second Circuit has clearly declared that a mere agency relationship, without an assignment of a claim, is insufficient to meet the constitutional injury-in-fact requirement."); *cf. Dir., Office of Workers' Comp. Programs v. Newport News Shipbldg. & Dry Dock Co.*, 514 U.S. 122, 132, 115 S. Ct. 1278, 1286 (1995) ("Agencies do not automatically have standing to sue for

10

actions that frustrate the purposes of their statutes."). Rather, an agent must demonstrate that it has an independent basis for standing, such as being a party to or having an interest in a contract, *see Artists Rights*, 2017 WL 933106, at *5, or that it has been assigned ownership or title in the claims at issue, *see W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 108. But SKAT has not alleged any independent injury in the Complaints, and SKAT has not established, as required to defeat a Rule 12(b)(1) motion, that it suffered a direct injury sufficient to confer standing.

*Second*, nor does SKAT purport to be acting pursuant to any valid assignment of claims from their rightful owner. The Complaints include no such allegations. An agent or third party may obtain standing if there is a valid assignment of the claims at issue by the individual or entity who suffered the actual injury. Under established Second Circuit law, "[t]o assign a claim effectively, the claim's owner 'must manifest an intention to make the assignee the owner of the claim … *i.e.*, to accomplish 'a completed transfer of the entire interest of the assignor in the particular subject of assignment.'" *Cortlandt St.*, 790 F.3d at 418. However, a grant to commence and prosecute suits, without a grant of title or ownership, merely creates a power of attorney that is insufficient to grant constitutional standing. *Id*. The rules governing assignment apply equally to government entities. *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 77 (2d Cir. 2013) (holding that trademark claims had not been properly assigned under Russian and federal law because Russian Federation retained various rights and did not vest state-chartered entity with ownership in claims).

If SKAT purports to sue as an assignee, it bears the burden of pleading that proposition and establishing its factual basis. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005). It failed to do so in the Complaints, and it does not appear that there is any basis to do so through amendment. There is no Danish law or

11

regulation that SKAT can point to that confers upon it ownership or title to the funds or the claims. The various Danish statutes outlining SKAT's authorities relate to its ability to collect taxes and administer the tax laws. Pilgaard Decl. ¶¶ 43-46. While these laws and regulations allow SKAT to collect or pay Danish treasury funds as part of its tax-related responsibilities, they do not allow assignment of title, ownership, or interest in the claims at issue. Pilgaard Decl. ¶ 40. Under clearly established Second Circuit law, it is not enough that a party has the ability to pursue a claim for a debt in court; it must have underlying ownership as well. *See Cortlandt St.*, 790 F.3d at 420 ("Our caselaw confirms that a purported assignee of a claim must plead a proprietary interest in that claim, and not simply the ability to pursue the claim on behalf of another, to bring the claim in his or her own name and satisfy the requirements of constitutional standing."); *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 107. Accordingly, because SKAT has not been assigned these claims, it lacks standing on this basis.

### D. Because SKAT Lacks Standing To Sue, The Cases Should Be Dismissed

"A court may not permit an action to continue … if jurisdiction was lacking at the commencement of a suit." *Cortlandt St.*, 790 F.3d at 422 (citations and alterations omitted). Because SKAT, the sole plaintiff, lacked standing at the commencement of this suit to bring any claims, the Complaints should be dismissed. Should the Court elect a remedy short of dismissal and provide SKAT with an opportunity to amend the Complaints under Rule 15, or to substitute a party under Rule 17, and should a substitute plaintiff seek to take SKAT's place, Defendants reserve their right to challenge that party's standing or assert any other applicable defenses against claims raised by a different plaintiff.

12

## CONCLUSION

For the foregoing reasons, the Complaints should be dismissed against all Defendants in the above captioned cases.

Dated: June 12, 2019
     New York, New York

By: /s/ *Michael G. Bongiorno*
MICHAEL G. BONGIORNO
ALAN E. SCHOENFELD
ALLISON STODDART
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

MICHAEL POSADA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

13